# EXHIBIT 1

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Stanley Black & Decker, Inc., a Delaware Corporation, formerly known as, Black & Decker (U.S.), Inc., a Maryland Corporation

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

GardenSensor, Inc., a Delaware Corporation, formerly known as PlantSense, Inc., a Delaware Corporation

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco County Superior Court
400 McAllister Street
San Francisco, California 94102

CASE NUMBER
*(Número del Caso):* CGC-12-521780

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Christopher J. McNamara, KBTF LLP, 101 California Street, San Francisco, CA 94111, (415) 421-6140

DATE: June 21, 2012    CLERK OF THE COURT, by    ROSALIO DELAVEGA NAVARRO, Deputy
*(Fecha)* JUN 21 2012    *(Secretario)*    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

under: ☐ CCP 416.10 (corporation)     ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)     ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)     ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

FAXED

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Christopher J. McNamara (CA Bar No. 209205)
cmcnamara@kasowitz.com
Robyn King Richards (CA Bar No. 191335)
rking@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
101 California Street, Suite 2300
San Francisco, CA 94111
Telephone: (415) 421-6140
Facsimile: (415) 398-5030

Andrew Glenn (*Pro Hac Vice App. To Be Submitted*)
aglenn@kasowitz.com
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1747
Facsimile: (212) 835-5047

Attorneys for Plaintiff
GARDENSENSOR, INC.

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN FRANCISCO

| | |
|---|---|
| GARDENSENSOR, INC., a Delaware Corporation, formerly known as PLANTSENSE, INC., a Delaware Corporation, <br><br> Plaintiff, <br><br> v. <br><br> STANLEY BLACK & DECKER, INC., a Delaware Corporation, formerly known as, BLACK & DECKER (U.S.), INC., a Maryland Corporation, <br><br> Defendant. | Case No. CGC-12-521780 <br><br> **COMPLAINT FOR FRAUDULENT INDUCEMENT, BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING AND FOR DAMAGES** |

Plaintiff GardenSensor, Inc., formerly known as PlantSense, Inc. ("GardenSensor", "PlantSense" or "Plaintiff"), by and through its undersigned attorneys, upon knowledge as to itself and its conduct and upon information and belief as to all other matters, for its complaint for fraudulent inducement, breach of contract, breach of fiduciary duty, breach of the duty of good faith

-1-
Plaintiff GardenSensor, Inc.'s Complaint

FAXED

and fair dealing and for damages against defendant Stanley Black & Decker, formerly known as, Black & Decker, Inc. ("B&D" or "Defendant"), hereby alleges as follows:

## 1. NATURE OF THE ACTION

1. This suit arises out of a written agreement creating a joint venture between PlantSense and B&D dated December 18, 2009, wherein B&D agreed to rebrand, manufacture, market and sell PlantSense's product, the EasyBloom Plant Sensor (hereafter the "EasyBloom Agreement").

2. The EasyBloom Agreement obligated B&D to commercialize and sell the EasyBloom Plant Sensor under the B&D brand (the "rebranded B&D Product"). PlantSense was obligated to support B&D's efforts to re-brand and manufacture the product; PlantSense also provided technical and product support to end users of the rebranded B&D Product. In exchange for granting B&D the exclusive right to manufacture, market and sell the rebranded B&D Product, B&D agreed to spend at least $350,000 in marketing placement funds necessary to support the launch and sale of the rebranded B&D Product by December 4, 2010, and also to sell at least 300,000 units before December 31, 2011 or pay a predetermined royalty to PlantSense.

3. When B&D executed the EasyBloom Agreement, B&D knew that it was in the midst of a merger with Stanley Works and further knew that it would be unable to devote the personnel and financial resources to timely perform its obligations under the EasyBloom Agreement. B&D also knew that it would be impossible to perform its obligations to redesign, manufacture and offer for sale the rebranded B&D Product according to the timeframe required by the EasyBloom Agreement. Despite this knowledge, B&D fraudulently induced PlantSense to enter into the EasyBloom Agreement, which, once the rebranded B&D Product was launched, granted B&D the exclusive right to manufacture, market and sell the EasyBloom Plant Sensor in all major retail channels through December 31, 2012.

4. The EasyBloom Agreement was critical to Plaintiff's future growth and success. PlantSense effectively placed itself in Defendant's hands because it was led to believe that B&D possessed the requisite skills and experience necessary to mass produce and commercialize the EasyBloom Plant Sensor. However, defendant repeatedly breached the terms of the EasyBloom

Agreement and failed to perform its obligations reasonably and in good faith. As a result of B&D's conduct, PlantSense has been completely destroyed and its efforts to commercialize its EasyBloom Plant Sensor have been irreparably harmed. Therefore, Plaintiff seeks damages from the Defendant in an amount to be determined at trial.

## II. THE PARTIES

5. Established in February 2006, Plaintiff PlantSense, Inc. is a Delaware corporation admitted to do business in California. Plaintiff's principal executive offices are located at 205 13th Street, Suite 2001, San Francisco, California 94103. PlantSense's first product, the EasyBloom Plant Sensor, was released in 2008. The EasyBloom Plant Sensor ("EB Product") is a patented, internet-enabled gardening tool that measures light intensity, temperature, moisture levels, fertility levels, and the drainage capabilities of soil to provide end users with common-sense advice for growing more than 6,000 species of plants. The product works by inserting the bloom-shaped device into the soil. Multiple sensors onboard the tool then collect environmental data and, through its interactive website, PlantSense diagnoses problems with ailing plants, makes recommendations to improve growing conditions, provides access to detailed plant information, advises users as to which plants will thrive in specific locations and offers them a means to purchase plants and fertilizer.

6. Defendant Stanley Black & Decker, Inc., formerly known as Black & Decker (U.S.), Inc., is a Delaware corporation admitted to do business in California. Defendant's principal executive offices are located at 1000 Stanley Drive, New Britain, Connecticut 06053. Black & Decker was established in 1910 and is a global manufacturer and marketer of power tools and accessories, hardware and home improvement products, including numerous lawn and garden tools. On March 12, 2010, Black & Decker merged with Stanley Works to form Stanley Black & Decker ("SBD").

## III. FACTUAL ALLEGATIONS

### PlantSense and Black Decker Begin Negotiations

7. PlantSense released its first product, the EasyBloom Plant Sensor, in 2008. Over the next year, PlantSense sold approximately 40,000 units through various channels including:

Amazon's website, word-of-mouth, PlantSense's website, Home Depot's website and less than two percent (2%) through small garden supply stores.

8. In 2009, PlantSense met with several companies to expand its business. In or about August of 2009, PlantSense began talks with B&D to rebrand the EasyBloom Plant Sensor as a B&D product ("the rebranded B&D Product") and to allow B&D to exclusively manufacture, market and sell the rebranded B&D Product through B&D's established retail channels in the United States.

9. After a series of discussions and three (3) face-to-face presentations, the parties entered into a Letter of Intent ("LOI") on October 9, 2009. The LOI reduced to writing key points of B&D's proposal to enter into an exclusive agreement with PlantSense to commercialize its existing EasyBloom Plant Sensor. The LOI memorialized B&D's requirement that PlantSense deal exclusively with B&D and both parties' intent to complete their respective due diligence and negotiate a final agreement within thirty days.

10. On November 2, 2009, Stanley Works and Black & Decker announced that they were merging. At the time the merger announcement was released, Brent Pfister of B&D assured PlantSense that B&D remained committed to the exclusive partnership with PlantSense and further stated that the merger would not affect the timing of the rebranded B&D Product's release or B&D's commitment of resources to ensure the project's success.

11. On November 9, 2009, Black & Decker sent PlantSense a written amendment to the LOI. The amendment, which was acknowledged and accepted by PlantSense, extended the exclusive dealing period set forth in Section 33 of the LOI for an additional thirty-day period, up to and including December 9, 2009.

12. On November 10, 2009, PlantSense met with B&D at its corporate office in Towson, Maryland. At this meeting, B&D presented a PowerPoint presentation entitled "Partnership Review." This presentation showed a mock-up of the rebranded B&D product and touted B&D's 100% brand awareness among consumers, its market share dominance and opportunity for growth in the sales of small appliances, lawn & garden tools, power tools and other consumer products.

13. The November 10, 2009 presentation further highlighted B&D's experience and commitment to product innovation, product development, marketing and merchandising. Specifically, B&D touted its success in bringing several similar sensor-type products to market including: B&D's AD925 Smart Scan Automotive Check Engine Light Diagnostic Tool, the TLD100 Thermal Leak Detector and the EM100B Energy Saver Series Power Monitor.

14. At the November 10, 2009 meeting, Jeff Cooper of B&D claimed that he came up the idea for the Bulls Eye Auto Leveling Laser with Stud Sensor and declared that B&D had a formula for bringing new, innovative products to market. According to Jeff Cooper, Brent Pfister and Greg Campbell of B&D, this formula included airing a long format infomercial; a method they claimed had been traditionally very successful for B&D.

15. Both Brent Pfister and Greg Campbell further asserted at the November 10, 2009 meeting that B&D was the *only* entity capable of successfully bringing the EasyBloom Plant Sensor to market. Brent Pfister was aware that PlantSense was also meeting with Scotts, and Pfister claimed that Scotts had "zero ability" to develop products for a new market.

16. PlantSense reasonably and detrimentally relied on the information and promises provided in and during B&D's November 10, 2009 Partnership Review meeting as a basis for entering into an exclusive agreement with B&D.

17. In or about December 2009, Brent Pfister of B&D and B&D engineers flew to San Francisco and met with Matthew Glenn at PlantSense's offices. During that meeting, Pfister showed Glenn concepts for additional products that B&D intended to develop using PlantSense's technology. Additionally, Pfister stated that B&D wanted to utilize PlantSense's technology as a platform for B&D to base its web-connected strategy going forward. PlantSense reasonably and detrimentally relied on the information and promises provided in and during this meeting as a further basis for entering into an exclusive agreement with B&D.

18. On December 18, 2009, PlantSense and B&D executed the exclusive EasyBloom Agreement and related Services Agreement. At the time PlantSense executed the Agreements, PlantSense placed its trust and confidence, as well its company's viability, in the hands of B&D with

the understanding that B&D would utilize its vast experience and unbiased commitment to manufacture, market and commercialize the rebranded B&D Product.

**The EasyBloom and Services Agreements**

19. B&D and PlantSense entered into a joint venture for the purpose of "developing a Black & Decker branded digital, internet-enabled plant care sensor." (Services Agreement at p. 1, Paragraph A.)

20. As part of this joint venture, the EasyBloom Agreement obligated B&D to commercialize, market, and offer the EB Product for sale under the B&D brand. (EasyBloom Agreement at pp. 1 and 6.)

21. As part of its obligations under the EasyBloom Agreement, B&D accepted responsibility for manufacturing the rebranded B&D product and for developing and implementing any improvements. (*See id.* at Sections 1.2 and 2.5.) B&D also agreed to provide first- and second-tier product support to its customers regarding the rebranded B&D Product. (*See id.* at Section 5.2.)

22. The EasyBloom Agreement obligated PlantSense to host and maintain a co-branded website, to collect and share customer data with B&D, and to reasonably support B&D with its efforts to improve the rebranded B&D Product, including improvements to both hardware and software. (*See id.* at Sections 2.1 through 2.5.) The Agreement also required PlantSense to provide third tier customer support concerning hardware and software problems and horticultural inquiries. (*See id.* at Section 5.2.)

23. In partial exchange for PlantSense granting B&D the exclusive right to manufacture market and sell the rebranded B&D Product through December 31, 2012, B&D agreed to spend at least $350,000 in marketing placement funds by December 4, 2010, and to provide reasonable evidence to PlantSense demonstrating that this marketing activity had taken place. (*See id.* at Section 3.2.)

24. Additionally, B&D agreed to make an initial Royalty Payment to PlantSense in the amount of $250,000 within five (5) days after the EasyBloom Agreement was signed. This amount