was to be credited against future Royalty Payments made by B&D. (*See* EasyBloom Agreement at Section 1.6.3.)[1]

25. Finally, to maintain its exclusive right to sell the rebranded B&D Product through December 31, 2012, B&D agreed to sell at least 300,000 units before December 31, 2011 and/or to pay PlantSense the difference between the actual Royalty Payments paid as of December 31, 2011 and 3 times the amount of Royalty Payments B&D would have paid to PlantSense if it had sold 300,000 units (using the average royalty per unit). (*See id.* at Section 1.4.3.)

26. The parties agreed to compose and issue a joint press release announcing their execution of EasyBloom Agreement by May 10, 2010. (*See id.* at Section 5.3.) The parties further agreed that the launch date of the rebranded B&D Product would occur in or about June 2010.

**Black & Decker Breaches the EasyBloom Agreement**

27. In March 2010, the merger between Stanley Works and Black and Decker was completed and the company became known as Stanley Black & Decker ("SBD"). Shortly thereafter, several key personnel involved in the EasyBloom Plant Sensor partnership left SBD.

28. SBD worked with a Chinese manufacturer, AsteelFlash, to establish a manufacturing process for mass production of the rebranded SBD Product. AsteelFlash was the same manufacturer previously used by PlantSense to manufacture the EasyBloom Plant Sensor in 2009.

29. Between June and July 2010, AsteelFlash manufactured a test run of 200 units of the rebranded SBD Product. Both SBD and PlantSense confirmed the quality and functionality of the test units, and SBD approved the manufacturing process. SBD then submitted an initial order of 60,000 units from AsteelFlash.

30. The parties issued a joint press release on August 24, 2010. The press release stated that the rebranded SBD Product, now dubbed the "PlantSmart Sensor," would be available for shipment in the fall of 2010. The joint press release referenced the partnership between PlantSense

---

[1] Royalty Payments are defined under Section 1.6, *et seq.*, of the EasyBloom Agreement as 10% of the net sale price (the invoice price to customer less 6.5%) for each unit sold during the term of the Agreement. (*See* EasyBloom Agreement at Sections 1.6.1 and 1.6.2.)

and SBD and confirmed that SBD would be responsible for the marketing, sales and merchandising of the PlantSmart Sensor.

31. In September 2010, after approximately 10,000 units were manufactured, SBD notified PlantSense that a manufacturing defect was causing damage to a critical component of the PlantSmart Sensor. SBD personnel Jennifer Munn and Andrew Smith both confirmed that the defect was caused by the manufacturer, AsteelFlash, as a result of its attempt to optimize assembly efficiency during the manufacturing process. However, these manufacturing procedures were approved by, and were the sole responsibility of SBD. At SBD's insistence, PlantSense was not involved in testing the first full production run and SBD failed to identify the defect before the units were shipped to the United States for distribution. Engineers from PlantSense quickly stepped in to assist SBD and AsteelFlash in solving the defective manufacturing process.

32. All of the defective units had to be recalled by SBD in October 2010. Engineers from PlantSense flew to SBD's warehouse and hired local subcontractors to repair the units. SBD then pursued and obtained recovery for the cost of repairing the defective units from AsteelFlash.

33. The manufacturing defect caused a delay in launching the rebranded SBD Product and cost PlantSense millions of dollars in royalties and web-based revenues.

34. The manufacturing defect also damaged PlantSense's reputation in the industry. For example, SBD later informed PlantSense that some of SBD's retail partners refused to sell the PlantSmart Sensor due to the manufacturing defect and recall.

35. In breach of its obligations under the EasyBloom Agreement, SBD de-emphasized its efforts to market the PlantSmart Sensor to its retail partners. Indeed, key SBD personnel working with the PlantSmart Sensor at SBD left their employment and SBD consciously decided to push SBD's core products for the 2010 holiday season instead of marketing the PlantSmart Sensor.

36. Despite insisting that SBD retain the exclusive right to manufacture market and sell the PlantSmart Sensor in all channels of trade following its launch, SBD failed to market the product to numerous existing retail partners and likewise failed to market the product to any new retailers during the term of the Agreement.

37. Contrary to SBD's obligations under the EasyBloom Agreement, SBD failed to spend the required marketing placement funds prior to December 4, 2010. SBD also failed to provide evidence of such expenditures to PlantSense.

38. Furthermore, SBD failed to reasonably market the PlantSmart Sensor to make it visible to consumers for the 2010 holiday season. Specifically, while the PlantSmart Sensor was offered for sale at Home Depot stores, units were displayed on lower-level shelves or were located on flimsy cardboard displays in the nursery area away from other prominently displayed SBD branded products offered for sale as holiday gifts.

39. To recover from the 2010 holiday season and to prepare for the 2011 spring growing season, PlantSense sought to produce and release a Direct Response Television ("DRTV") infomercial at its own expense. When SBD learned of the planned DRTV campaign, SBD refused to allow PlantSense to film and air it. Instead, SBD insisted on controlling the marketing efforts for the PlantSmart Sensor. SBD mishandled the DRTV campaign and it failed to reach the intended target audience or generate sales.

40. The EasyBloom Agreement obligated SBD to provide monthly sales data and forecasts to PlantSense. SBD was aware that such data was critical for PlantSense to anticipate its staffing needs in order to meet its obligations under the Agreement. After the initial forecast was provided by Jeff Cooper, SBD provided only one additional forecast to PlantSense despite numerous requests. Additionally, SBD failed to make timely royalty payments to PlantSense as required by the EasyBloom Agreement. SBD has also refused to provide PlantSense with required sales and royalty data.

41. In addition to its manufacturing, marketing and merchandising failures, SBD also failed to provide reasonable first- and second-tier customer support to end users of the PlantSense Sensor as required under the EasyBloom Agreement. SBD's failure to provide reasonable first- and second-tier customer support alienated PlantSense's customers.

42. Prior to and after the launch of the rebranded SBD product, SBD began making threats to cease marketing the PlantSmart Sensor unless PlantSense agreed to a contract extension.

1  PlantSense reasonably refused to extend its contract with SBD due to SBD's repeated breaches of
2  the EasyBloom Agreement.
3      43. SBD's repeated breaches of the EasyBloom Agreement, coupled with its insistence on
4  exclusivity, ultimately led to the destruction of PlantSense's business.

## IV. COUNT ONE
## (FRAUDULENT INDUCEMENT)

44. Plaintiff hereby realleges and incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 43 above.

45. Plaintiff entered into the subject contracts with Defendant in an effort to expand Plaintiff's business and to increase sales of its patented, internet-enabled gardening tool, the EasyBloom Plant Sensor.

46. Between August and December 2009, Defendant, by and through its representatives Brent Pfister and Greg Campbell, made the following material misrepresentations to Plaintiff's key personnel with the intent to induce Plaintiff into entering into an exclusive agreement with Defendant:

    a. Brent Pfister, Jeff Cooper and Greg misrepresented to Matthew Glenn and Jim Long that B&D had established relationships with numerous buyers and retail partners who were interested in selling PlantSense's EasyBloom Plant Sensor;

    b. Brent Pfister, Jeff Cooper and Greg Campbell misrepresented to Matthew Glenn and Jim Long that B&D was the only entity capable of commercializing the EasyBloom Plant Sensor;

    c. Brent Pfister, Jeff Cooper and Greg Campbell misrepresented SBD's interest in commercializing PlantSense's EasyBloom Plant Sensor to Matthew Glenn and Jim Long;

    d. Brent Pfister, Jeff Cooper, DeAnn Romjue and Greg Campbell misrepresented B&D's merchandising and marketing capabilities to Matthew Glenn, Jim

Long and Patrick Hopf throughout the negotiation process and during the term of the Agreement;

e. Brent Pfister misrepresented B&D's interest and capabilities for developing new products based upon PlantSense's EasyBloom technology to Matthew Glenn and Andrew Hill;

f. Brent Pfister and Greg Campbell misrepresented to Matthew Glenn, Jim Long and Andrew Hill that B&D could have the rebranded B&D Product ready for mass production and release by June 2010;

g. Brent Pfister and DeAnn Romjue misrepresented to Matthew Glenn and Jim Long that B&D's merger with Stanley Works would not affect the timing of the rebranded B&D Product's release;

h. Brent Pfister and Greg Campbell misrepresented to Matthew Glenn and Jim Long that its merger with Stanley Works would not interfere with B&D's promises to perform under the EasyBloom Agreement;

i. Brent Pfister misrepresented to Matthew Glenn that B&D intended to develop additional gardening products utilizing PlantSense's technology;

j. Brent Pfister misrepresented to Matthew Glenn that B&D wanted to utilize PlantSense's technology as a platform for B&D to base its web-connected strategy going forward.

47. Defendant's agents made each of these material misrepresentations to Plaintiff with knowledge of their falsity or with reckless disregard for their truth or falsity, and with the intent to mislead Plaintiff into relying on them.

48. Plaintiff's willingness to assent to the terms of the exclusive EasyBloom Agreement with Defendant, and the Agreement itself, was caused by the material misrepresentations of Defendant and its agents Brent Pfister, Jeff Cooper, DeAnn Romjue and Greg Campbell.

49. Plaintiff reasonably and justifiably relied on the material misrepresentations of Defendant and its agents Brent Pfister, Jeff Cooper, DeAnn Romjue and Greg Campbell to its detriment and was proximately damaged thereby in an amount to be determined at trial.

50. Plaintiff is entitled to actual and consequential damages for Defendant's material misrepresentations, as well as pre and post-judgment interest thereon as provided by law.

51. Defendant's conduct was willful, malicious, fraudulent, oppressive and/or recklessly committed, with wanton disregard for Plaintiff's rights, justifying an award of punitive damages from Defendant to deter similar wrongful conduct in the future.

## V. COUNT TWO
## (BREACH OF CONTRACT)

52. Plaintiff hereby realleges and incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 51 above.

53. The subject contracts, described herein as the EasyBloom Agreement and the Services Agreement, were entered into by the parties on December 18, 2009.

54. Plaintiff has performed all of its obligations under the EasyBloom Agreement and the Services Agreement.

55. SBD breached the EasyBloom Agreement in each of the following particulars:

    a. In failing to reasonably oversee the manufacturing process and test finished units to prevent or minimize the mass failures seen during the initial production of the rebranded SBD product (EasyBloom Agreement at Section 1.2 *et. seq.*);

    b. In failing to commercialize the rebranded SBD Product (*See id.* at Paragraph 2);

    c. In failing to spend at least $350,000 in marketing placement funds necessary to support the launch and sale of the rebranded SBD Product on or before December 4, 2010, and failing to provide evidence of same to PlantSense (*See id.* at Section 3.2);

d. In failing to purchase at least 300,000 units of the rebranded SBD Product or to pay PlantSense the required royalty payments for failing to purchase 300,000 units by December 31, 2011 (*See id.* at Section 1.4.3);

e. In failing to make timely royalty payments to PlantSense as required under the EasyBloom Agreement (*See id.* at Section 1.6 *et. seq.*);

f. In failing to provide critical sales and delivery forecasts to PlantSense as required under the EasyBloom Agreement (*See id.* at Section 1.3);

g. In failing to reasonably provide first- and second-tier customer support for the rebranded SBD product (*See id.* at Section 5.2);

h. By threatening to and then consciously refusing to continue marketing the rebranded SBD product when PlantSense declined to execute an extension of the EasyBloom Agreement.

56. As a direct and proximate result of Defendant's breaches of the EasyBloom Agreement, Plaintiff has been damaged and is entitled to recover actual and consequential damages from Defendant in an amount to be proven at trial.

## VI. COUNT THREE
## (BREACH OF FIDUCIARY DUTIES)

57. Plaintiff hereby realleges and incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 56 above.

58. At the time Plaintiff met with and entered into negotiations with Defendant to commercialize its EasyBloom Plant Sensor, Plaintiff was a start-up looking to partner with a company experienced in manufacturing, branding, marketing and selling innovative tools to the U.S. and international markets.

59. During its discussions and meetings with Plaintiff, Defendant represented itself to be the *only* entity capable of commercializing Plaintiff's EasyBloom Plant Sensor and touted its reputation and experience in the manufacturing, branding and merchandising of similar sensor-type products. Defendant also promoted its 100% brand awareness among consumers and its market

-13-
Plaintiff GardenSensor, Inc.'s Complaint