UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GARDENSENSOR, INC., a Delaware Corporation, formerly known as PLANTSENSE, INC., a Delaware Corporation,<br><br>          Plaintiff,<br><br>     v.<br><br>BLACK & DECKER (U.S.), INC., a Maryland Corporation,<br><br>          Defendant. | Case No. 12-cv-03922 NC<br><br>**ORDER ON DISCOVERY DISPUTES**<br><br>Re: Dkt. Nos. 94, 100 |

Pending before the Court are two discovery disputes: Dkt. No. 94, in which Gardensensor moves to compel further responses to interrogatories and document requests from Black & Decker, and Dkt. No. 100, in which Black & Decker moves for a protective order preventing the deposition of Jeffrey Ansell.

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Furthermore, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* Information is relevant for discovery purposes if it "appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, even when the information sought by the parties in a civil lawsuit is relevant, the Court must

limit the scope of discovery if it determines that (1) "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"; (2) "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"; or (3) "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C). In other words, the Court seeks to "strike[] the proper balance between permitting relevant discovery and limiting the scope and burdens of the discovery to what is proportional to the case." *Kaiser v. BMW of N. Am., LLC*, No. 12-cv-01311 DMR, 2013 WL 1856578, at *3 (N.D. Cal. May 2, 2013).

Having considered the parties' briefs and proposed orders, the arguments of counsel, and the record in this case, the Court ORDERS as follows:

**1. Gardensensor's Motion to Compel**

**a. Interrogatories and Documents Related to Marketing Spend**

One of Gardensensor's claims in this action is that Black & Decker failed to abide by its contractual obligation to market and commercialize the PlantSmart product when it failed to support the product with marketing spend "normal for their business" as required by the parties' agreement. *See* Dkt. No. 96 ¶ 2; 97-10 § 3.2. Gardensensor now moves to compel supplemental responses to Interrogatories Nos. 4, 7, and 12-15, which seek information about marketing projections and spend, as well as sales projections and actual sales data for sensor-related products and for new products launched during 2010 and 2011. Dkt. No. 97-3.

Black & Decker objects to these interrogatories based on a lack of relevance. Dkt. No. 99 at 2. The Court, however, finds that the interrogatories in question appear reasonably calculated to lead to the discovery of admissible evidence as to what marketing efforts were "normal" for Black & Decker's business. Black & Decker also asserts that it is "overly burdensome - if not impossible -" to respond to these requests because "there is no

available means to search for the information." *Id.* The Court finds that Black & Decker has failed to substantiate this assertion. With respect to Interrogatories Nos. 4 and 7, Black & Decker's responses are inadequate because they do not specify the factual basis for its agreement to commit to a minimum marketing spend or for its understanding of what marketing spend was "normal" for Black & Decker's business.

Black & Decker must provide supplemental responses to Interrogatories Nos. 4, 7, and 12-15 by September 29, 2014. For the purposes of such responses, the phrase "new product" as used in Interrogatory No. 12 means new products launched by Black & Decker during the years 2010 and 2011.

In addition, Gardensensor asserts that Black & Decker has failed to confirm that all documents relating to the marketing budget and marketing spend of "comparable" products have been produced. Dkt. No. 94 at 3. By September 29, 2014, Black & Decker must produce the following documents and serve amended responses to the document requests confirming that the following documents have been produced:

- All documents reflecting Black & Decker's marketing budget for Outdoor Portable Gardening Tools for the 2010, 2011 and 2012 holiday seasons. (Request for Production No. 49, Dkt. No. 97-1 at 7.)
- All documents reflecting Black & Decker's monthly, quarterly, and annual marketing budget for any gardening and outdoor products sold at any time during the years 2010 and 2011. (Request for Production, No. 65, Dkt. No. 97-2 at 6.)
- All reports and summaries reflecting Black & Decker's actual monthly, quarterly, and annual marketing expenditures for any gardening and outdoor products sold at any time during the years 2010 and 2011. (Request for Production, No. 66, Dkt. No. 97-2 at 6.)
- All documents reflecting Black & Decker's monthly, quarterly, and annual marketing budget for any sensor-based products sold at any time during the years 2010 and 2011. (Request for Production, No. 67, Dkt. No. 97-2 at 6.)

- All reports and summaries reflecting Black & Decker's actual monthly, quarterly, and annual marketing expenditures for any sensor-based products sold at any time during the years 2010 and 2011.  (Request for Production, No. 68, Dkt. No. 97-2 at 7.)
- All documents reflecting Black & Decker's monthly, quarterly, and annual marketing budget for any new products sold at any time during the years 2010 and 2011.  (Request for Production, No. 69, Dkt. No. 97-2 at 7.)
- All documents and communications reflecting Black & Decker's analysis of Black & Decker's actual monthly, quarterly, and annual marketing expenditures for any new products sold at any time during the years 2010 and 2011.  (Request for Productions, Nos. 70 and 71, Dkt. No. 97-2 at 7.)
- All documents and communications reflecting what Black & Decker believes is or how Black & Decker measures or defines "marketing spends normal for [its] business" as referenced in § 3.2 in the EasyBloom Agreement.  (Request for Production, No. 72, Dkt. No. 97-2 at 8.)
- All documents and communications reflecting Black & Decker's analysis of Black & Decker's marketing expenditures for any sensor-based products sold at any time during the years 2010 and 2011.  (Request for Production, No. 73, Dkt. No. 97-2 at 8.)

Additionally, Gardensensor requests an adverse inference at trial in its favor concerning the failure by Black & Decker "to meet its discovery obligations with respect to Plaintiff's document requests and interrogatories concerning Defendant's 'normal' and 'reasonable' marketing efforts and expenditures." Dkt. No. 96-2 at 2.  This request is denied without prejudice as premature.  Any proposed adverse inference instructions will be taken up at the pretrial conference.

### b.    Performance Evaluations

Gardensensor moves to compel Black & Decker to produce the employee evaluations for employees who worked on the PlantSmart project. Dkt. No. 96 at 7.  The basis for this

request is deposition testimony obtained by Gardensensor indicating that Black & Decker maintained written annual reviews that evaluated Black & Decker's employees' performance on particular projects. *Id.* Black & Decker objects on the basis that Gardensensor "never requested" these documents, and the request invades employees' privacy rights. Dkt. No. 99 at 4.

The Court finds that Gardensensor's request appears reasonably calculated to lead to the discovery of admissible evidence as to Black & Decker's performance under the contract at issue. By September 29, 2014, Black & Decker must produce the employee evaluations in its possession, custody, or control, for the following employees for the years 2010 and 2011 that are at least in part based on those employees' performance on the PlantSmart project:

1. Brent Patrick Pfister;
2. DeAnn Romjue;
3. Catherine McHugh;
4. Christine Selby Regan;
5. Kriston Ohm;
6. Andrew P. Smith;
7. Jennifer Resh Munn;
8. Cheryl Jenner;
9. Ivan Guo;
10. Michael Isch;
11. Aaron Erter;
12. Roland Jackson;
13. Katie Johnson;
14. Matt Nestorick;
15. Bill Fuchs;
16. Kim Kennedy;
17. Diana Janney;

18. Jones Gu; and

19. John Cunningham.

The employee evaluations must be produced subject to the protective order in this case, which will address the privacy concerns raised by Black & Decker.

### c. Redactions

Gardensensor contends that Black & Decker's production contains material that is redacted without any apparent claim of privilege or other recognized exception to discovery obligations, and moves to compel the production of unredacted versions. Dkt. No. 96 at 7.

In response Black & Decker asserts, without any citation to authority, that it is entitled to redact irrelevant information from otherwise relevant documents. Dkt. No. 99 at 4. The Court disagrees. As courts have recognized, this type of unilateral redaction is disfavored, and a protective order could ensure the confidentiality of sensitive information. *See, e.g.*, *Evon v. Law Offices of Sidney Mickell*, No. 09-0760, 2010 WL 455476, at *2 n.1 (E.D. Cal. Feb. 3, 2010) ("Redaction is, after all, an alteration of potential evidence. The Federal Rules sanction only very limited unilateral redaction, *see* Fed. R. Civ. P. 5.2. Outside of these limited circumstances, a party should not take it upon him, her or itself to decide unilaterally what context is necessary for the non-redacted part disclosed, and what might be useless to the case."); *Williston Basin Interstate Pipeline Co. v. Factory Mut. Ins. Co.*, 270 F.R.D. 456, 458-59 (D.N.D. 2010) (criticizing "the unilateral editing of documents produced in discovery, particularly when there is a protective order in place, given the suspicion and distrust that it generates, which, in turn, leads to unnecessary discovery disputes and burdensome *in camera* inspections."); *see also Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 617 (N.D. Cal. 2006) (ordering the production of unredacted agreement claimed to contain confidential financial information and trade secrets subject to protective order); *Holman v. Experian Info. Solutions, Inc.*, No. 11-cv-00180 CW (DMR), 2012 WL 2501085, at *6 (N.D. Cal. June 27, 2012) (ordering the production of documents in unredacted form where the redactions were claimed to protect non-responsive, highly sensitive business information, and finding that such information was sufficiently protected

by the protective order in the case).

By September 29, 2014, Black & Decker must produce unredacted versions of BD-00060989-1003; BD-00074462-501; and BD-00074502-543.

### d.  Ansell Documents

Another discovery issue raised by Gardensensor is Black & Decker's failure to produce any documents from its senior executive Jeffrey Ansell, who directed Black & Decker to cut its budget for a type of marketing that was critical to the success of PlantSense. Dkt. No. 96 at 2. Black & Decker responds that no responsive documents were found because any emails sent or received by Ansell or his assistant, Diane Choquette, relevant to the PlantSmart project would have been purged prior to the commencement of the litigation. Dkt. No. 99 at 3-4.

By 5:00 p.m. on September 24, 2014, Black & Decker must file a declaration from Choquette explaining the practice of deleting Ansell's emails and other documents, including a description of when that practice commenced and whether it ceased or otherwise changed after Black & Decker had notice of potential claims by Gardensensor. Black & Decker must also provide by the same deadline evidence of any efforts made to preserve Ansell's emails and documents authored by him that might be relevant to the subject matter of this litigation.

### e.  Attorneys' Fees

Gardensensor's proposed order contains a request that the Court order Black & Decker to pay Gardensensor's reasonable attorney's fees "with respect [sic] the foregoing discovery issues." Dkt. No. 96-2 at 2. This request is denied without prejudice.

### 2.  **Black & Decker's Motion for Protective Order**

Black & Decker moves for a protective order preventing the deposition of Jeffrey Ansell on the grounds that the notice of deposition was not served in a reasonably timely manner and Gardensensor failed to meet and confer regarding the availability of the witness and counsel as required by local rules. Dkt. No. 100 at 1. The parties stipulated and the Court ordered that the deposition of Ansell be taken on September 5, and that documents

relevant to that deposition be produced by August 18. Dkt. Nos. 83-84. Later, at the parties' stipulated request, the Court ordered that "the depositions of Defendant's witnesses, Cathy McHugh, John Weetenkamp, Kathy Ohm, DeAnn Romjue and Jeffrey Ansell, will be held on or before September 19, 2014," based on the delayed production of documents by Black & Decker. Dkt. Nos. 89-90. On September 3, Gardensensor's counsel took the Ansell deposition off calendar pending Black & Decker's final production. Dkt. No. 100 at 5-6.

While the Court does not approve of Gardensensor's last-minute notice taking the deposition off calendar, counsel for both parties were responsible for communicating about the schedule of depositions and anticipated document productions. The failure to do so resulted in unnecessarily burdening the Court, the parties, and the witness with this discovery dispute. Given that the deposition of Ansell appears reasonably calculated to lead to the discovery of admissible evidence, and the issue concerning the document destruction and failure to produce any documents from Ansell, Black & Decker's motion for protective order is denied. The deposition must take place on September 25, 2014, and is limited to 5 hours.

IT IS SO ORDERED.

Date: September 22, 2014

Nathanael M. Cousins
United States Magistrate Judge