# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| GARDENSENSOR, INC., a Delaware Corporation, formerly known as PLANTSENSE, INC., a Delaware Corporation,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STANLEY BLACK & DECKER, INC., a Delaware Corporation, formerly known as BLACK & DECKER (U.S.), a Maryland Corporation,<br><br>　　　　　Defendant. | Case No. 12-cv-03922 NC<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 76 |

Black & Decker moves for summary judgment, or in the alternative, partial summary judgment on Gardensensor's breach of contract action. The damages Gardensensor seeks consist entirely of lost profits. Black & Decker contends that the breach of contract claim fails as a matter of law because: 1) the Easybloom Agreement, entered into by Gardensensor and Black & Decker, waives the recovery of all lost profits; 2) even if the agreement only waives consequential lost profits, the damages sought by Gardensensor are barred because they are consequential; and 3) the damages sought by Gardensensor are

speculative and cannot be established with reasonable certainty.  Because the Court finds that Black & Decker has failed to establish that the claimed lost profits are barred or are too speculative, the Court DENIES Black & Decker's motion for summary judgment.

## I. BACKGROUND

Gardensensor, then known as PlantSense, developed the Easybloom Plant Sensor in 2008.  Dkt. No. 75-2 at 3.  A customer could insert the Plant Sensor into the ground, and use it to take readings of the soil, light, and temperature.  Dkt. No. 68-28 at 16.  The customer could then connect the device to his or her computer, and get recommendations for growing house or garden plants based on the readings.  *Id.* at 16-17.

Gardensensor started selling the Plant Sensor, and generated revenue from sales of the product itself and related web-based revenues.  Dkt. No. 75-8 at 2.  Gardensensor then sought out a partner with experience in mass marketing and sales, to go into "big box retail."  Dkt. No. 77-9 at 11.  On December 18, 2009, Gardensensor and Black & Decker entered into an agreement to commercialize the Plant Sensor ("Easybloom Agreement").  Dkt. No. 68-28.  Under the Easybloom Agreement, Black & Decker had the exclusive right to manufacture and sell the device.  *Id.* at 3-4.  Black & Decker agreed "to commit the marketing funds that it reasonably determines are necessary to support the launch and sale" of the Plant Sensor, with a minimum marketing placement spend of $350,000 by December 4, 2010.  *Id.* at 7.  In addition, Black & Decker agreed to pay Gardensensor 10% of the net sale price of each unit sold during the term of the contract.  *Id.* at 4.  The Easybloom Agreement further provided that Gardensensor "is responsible for developing revenues based on website click through to other parties" and that Black & Decker "has no claim to [Gardensensor's] web revenues or subscription revenues."  *Id.* at 6.

On June 21, 2012, Gardensensor filed this action, claiming that Black & Decker breached the Easybloom Agreement by failing to market the device as required by the agreement.  Dkt. Nos. 1; 24 at 9-10.  Gardensensor is seeking lost profits as a result of the breach in the amount of $25 million.  Dkt. No. 24 at 12.  Black & Decker now brings this motion for summary judgment.  Dkt. No. 76.  The Easybloom Agreement provides for all

disputes regarding the agreement to be governed by Delaware law.  Dkt. No. 68-28 at 14.

## II. LEGAL STANDARD

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A fact is material when, under governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  Bald assertions that genuine issues of material fact exist are insufficient.  *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial.  Fed. R. Civ. P. 56(c); *Ruffin v. Cnty. of L.A.*, 607 F.2d 1276, 1280 (9th Cir. 1979).  All reasonable inferences, however, must be drawn in the light most favorable to the nonmoving party.  *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

## III. DISCUSSION

### A. Black & Decker Has Failed to Establish That the Easybloom Agreement Bars All Lost Profit Damages As a Matter of Law

Black & Decker contends that it is entitled to summary judgment as a matter of law because the Easybloom Agreement waives the recovery of all lost profit damages.  Dkt. No. 76 at 16.

The Easybloom Agreement states, in relevant part:

> 8.10. <u>NO CONSEQUENTIAL DAMAGES.</u> EXCEPT FOR DAMAGES SUBJECT TO INDEMNIFICATION UNDER SECTION 4.2, IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ***INCIDENTAL, CONSEQUENTIAL, PUNITIVE OR***

*INDIRECT DAMAGES OF ANY KIND INCURRED BY THE OTHER PARTY, INCLUDING WITHOUT LIMITATION ECONOMIC DAMAGES OR INJURY TO PROPERTY AND LOST PROFITS,* REGARDLESS OF WHETHER SUCH PARTY SHALL BE ADVISED, SHALL HAVE OTHER REASON TO KNOW, OR IN FACT SHALL KNOW OF THE POSSIBILITY OF THE FOREGOING.

Dkt. No. 68-28 at 13 (emphasis added).

Black & Decker argues that this damages limitation provision must be read such that consequential damages include all forms of lost profits, particularly when considered in the context of the entire agreement. Dkt. No. 76 at 16. Black & Decker argues that the use of the language "without limitation" after "consequential" but before "lost profits," demonstrates a clear intent by the parties to modify the meaning of the term "consequential damages" so that recovery of all forms of lost profits is barred. Dkt. No. 76 at 16. To support its argument, Black & Decker attempts to analogize the present case to *Quicksilver Resources, Inc. v. Eagle Drilling, L.L.C.*, No. 08-cv-868, 2009 WL 1312598 (S.D. Tex. May 8, 2009). However, the *Quicksilver* case is distinguishable, as the clause in question there read: "Consequential Damages: . . . [P]arties agree that special, indirect, or consequential damages *shall be deemed to include*, without limitation, the following: loss of profit or revenue." *Quicksilver*, 2009 WL 1312598, at *5 (emphasis added). Here, Black & Decker has failed to point to any provisions in the Easybloom Agreement demonstrating a clear intent to define indirect or consequential damages as including all forms of lost profits. Moreover, even assuming that *Quicksilver* stood for the proposition that Black & Decker claims it does, its holding is also inapposite because it is applying Oklahoma, rather than Delaware law. *See id.* at *3.

The parties have not cited to any binding precedent on point applying Delaware law, and the Court is not aware of any. However, a case from this District has analyzed a contract clause similar to the damages limitation provision in the Easybloom Agreement, under California and New York law. *Coremetrics, Inc. v. Atomic Park.com*, No. 04-cv-0222 EMC, 2005 WL 3310093 (N.D. Cal. Dec. 7, 2005). In *Coremetrics*, the contract provision read, in relevant part, "IN NO EVENT SHALL EITHER PARTY BE LIABLE FOR ANY INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES,

INCLUDING WITHOUT LIMITATION DAMAGES FOR LOSS OF PROFITS." *Id.* at *2. The *Coremetrics* court held that the clause in question "contemplates a bar on recovery of indirect damages, not the direct damages [plaintiff] seeks. . . . A reasonable jury, after having read this clause, could only conclude that [plaintiff] and [defendant] intended to bar recovery of indirect damages, of which lost profits is just one of several measures." *Id.* at *4. *See also In re First Magnus Fin. Corp.*, No. 10-1006, 2010 WL 6452904, at *6 (B.A.P. 9th Cir. Aug. 31, 2010) (following *Coremetrics* and *Penncro Assocs., Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151 (10th Cir. 2007) and holding, under Delaware law, that similar contract provision does not preclude recovery of direct lost profits).

The language of the damages limitation provision at issue here is very similar to the pertinent contractual language in *Coremetrics* and *In re First Magnus Fin. Corp.* Construing the plain meaning of the damages limitation provision, the Court finds that Black & Decker has not established that its interpretation of the provision as barring all lost profits is the only reasonable interpretation as a matter of law.

### B. Black & Decker Has Not Shown That the Lost Profits Sought by Gardensensor Are Consequential as a Matter of Law

Black & Decker next argues that even if the damages limitation provision does not limit all forms of lost profits, the damages sought here are "clearly consequential damages prohibited by the terms of the contract." Dkt. No. 76 at 12. In response, Gardensensor contends that its lost profit damages are direct damages as a matter of law. Dkt. No. 78 at 11.

Under Delaware law, "[direct] damages are defined as those as the law itself implies or presumes to have accrued from the wrong complained of, for the reason that they are its immediate, direct, and proximate result, or such as necessarily result from the injury." *Pharmaceutical Product Development, Inc. v. TVM Life*, No. 5688, 2011 WL 549163, at *6 (Del. Ch. Feb. 10, 2011) (internal quotation marks and citations omitted). On the other hand, "[c]onsequential damages . . . are defined as damages that do not flow directly and immediately from the act of the [breaching] party, but only from some of the consequences

or results of such act but were nonetheless reasonably foreseeable or contemplated by the parties at the time the contract was entered into as a probable result of a breach." *Id.* (internal quotation marks and citations omitted).

In deciding when lost profits constitute consequential damages, the Delaware Court of Chancery in *eCommerce Indus., Inc. v. MWA Intelligence, Inc.*, No. 7471, 2013 WL 5621678, at *47 (Del. Ch. Sept. 30, 2013) accepted "the Second Circuit's cogent explanation" in *Tractebel Energy Marketing v. AEP Power Marketing*, 487 F.3d 89 (2d Cir. 2007). In *Tractebel*, the Court held that lost profits are considered consequential damages when "as a result of the breach, the non-breaching party suffers loss of profits or collateral business arrangements" but not "when profits are precisely what the non-breaching party bargained for, and only an award of damages equal to lost profits will put the non-breaching party in the same position he would have occupied had the contract been performed." *eCommerce*, 2013 WL 5621678, at *47 (citing *Tractebel*, 487 F.3d at 109-10). Black & Decker attempts to distinguish *eCommerce* by arguing that it only applies "where the lost profits are recoverable by virtue of a violation of a non-compete clause." Dkt. No. 76 at 13. However, there is no indication in the *eCommerce* opinion that its holding is so limited.

Here, Gardensensor seeks to recover the web-based revenues and royalties to which it claims it was entitled to under the express terms of the Easybloom Agreement and would have received but for Black & Decker's breaches. Dkt. No. 78 at 8-9. Gardensensor argues that "selling the PlantSmart Sensor and related web-based services, on which both parties depended for their respective payments . . . was the 'very essence' of the Agreement," and that the loss of profits it is seeking "was the natural and probable consequence of B&D's breach and are, therefore, properly categorized as direct damages." *Id.* at 21.

The Easybloom agreement gave Black & Decker the exclusive right to manufacture and sell the Plant Sensor, and required Black & Decker to sell at least 300,000 units before December 31, 2011, in order to maintain exclusivity. Dkt. No. 68-28 at 3-4. Black & Decker also agreed to a minimum marketing placement spend and "to commit the marketing funds that it reasonably determines are necessary to support the launch and sale"

of the Plant Sensor. *Id.* at 7.  In addition, Black & Decker agreed to pay Gardensensor 10% of the net sale price of each unit sold during the term of the contract. *Id.* at 4.  The Easybloom Agreement further provided that Gardensensor "is responsible for developing revenues based on website click through to other parties" and that Black & Decker "has no claim to [Gardensensor's] web revenues or subscription revenues." *Id.* at 6.  Considering the Easybloom Agreement in its entirety, the Court finds that a reasonable juror could conclude that the lost profits sought by Gardensensor are what Gardensensor bargained for when it entered into the agreement.  Therefore, Gardensensor's lost profits are not barred by the damages limitation provision in the agreement.

### C. The Damages Sought by Gardensensor Are Not Too Speculative

Finally, Black & Decker argues that even if the Court rejects its first two arguments, the Court should still grant summary judgment because the lost profit damages Gardensensor seeks are "too remote and uncertain as a matter of law because [they] are dependent on the success of a new product with an unestablished and unprofitable sales history." Dkt. No. 76 at 16.

Under Delaware law, "in order to recover damages from a defendant for breach of contract, [a plaintiff] must demonstrate with *reasonable certainty* that defendant's breach caused the loss." *Tanner v. Exxon Corp.*, No. 79C-JA-5, 1981 WL 191389, at *1 (Del. Super. Ct. July 23, 1981).  However, "reasonable certainty" does not mean "absolute certainty." *Id.*  Rather, "reasonable certainty" "merely means that the fact of damages must be taken out of the area of speculation." *Id.*  While lost profits on a new business may be too speculative without evidence that the business would be profitable, "recovery for lost profits is not denied merely because a business is newly established." *Mobile Diagnostics, Inc. v. Lindell Radiology, P.A.*, No. 83C-AU-66, 1985 WL 189018, at *4 (Del. Super. Ct. July 29, 1985).

Here, Gardensensor contends that contemporaneous sales projections prepared by Black & Decker provide a reasonable foundation to estimate Gardensensor's lost profit damages. Dkt. Nos. 68-3; 77-17; 77-19; 78 at 10, 14-15.  While Black & Decker argues

Case No. 12-cv-03922 NC
ORDER DENYING SUMMARY
JUDGMENT
7

that these projections are unreliable and were only necessary for internal purposes such as placing orders, Dkt. No. 76 at 18, the fact remains that Black & Decker did rely on them in committing resources and performing under the contract. Black & Decker's attempt to discount the reliability of its own sales projections goes to the weight of the evidence which is immaterial for the purposes of summary judgment.

Furthermore, Gardensensor points to other evidence, aside from the sales projections, that supports the conclusion that its claimed lost profits are not too speculative. The evidence includes testimony from Black & Decker witnesses that the Plant Sensor was a viable commercial product and that it generated interest in the marketplace. Dkt. Nos. 77-9 at 4-5; 77-15; 77-16 at 3-4; 77-20; 77-21. Finding that the claimed lost profit damages are not too speculative, the Court denies summary judgment on this ground as well.

## IV. CONCLUSION

Because the Court finds that Black & Decker has failed to establish that the claimed lost profits are barred or are too speculative, the Court DENIES Black & Decker's motion for summary judgment.

IT IS SO ORDERED.

Date: September 24, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge