1
2
3
4
5
6
7
8              **UNITED STATES DISTRICT COURT**
9            **NORTHERN DISTRICT OF CALIFORNIA**
10              **SAN FRANCISCO DIVISION**
11

| | |
|---|---|
| GARDENSENSOR, INC., a Delaware Corporation, formerly known as PLANTSENSE, INC., a Delaware Corporation, | Case No. 12-cv-03922 NC |
| Plaintiff, | **PROPOSED FINAL JURY INSTRUCTIONS** |
| v. | |
| BLACK & DECKER (U.S.), INC., a Maryland Corporation, | |
| Defendant. | |

20   **I.      Introduction**

21          Members of the Jury: Now that you have heard all of the evidence, it is my duty to

22   instruct you as to the law of the case.

23          Each of you has received a copy of these instructions that you may take with you to

24   the jury room to consult during your deliberations.

25          You must not infer from these instructions or from anything I may say or do as

26   indicating that I have an opinion regarding the evidence or what your verdict should be.

27          It is your duty to find the facts from all the evidence in the case. To those facts you

28   will apply the law as I give it to you. You must follow the law as I give it to you whether

1    you agree with it or not.  And you must not be influenced by any personal likes or dislikes,

2    opinions, prejudices, or sympathy.  That means that you must decide the case solely on the

3    evidence before you.  You will recall that you took an oath to do so.

4         In following my instructions, you must follow all of them and not single out some and

5    ignore others; they are all important.

6    **II.    Summary of the Claims and Defenses in this Case**

7         I will give you a brief review of the positions of the parties:

8         This case involves an alleged breach of contract.  The plaintiff in this case is a

9    company called GARDENSENSOR, Inc. and is also known as "PLANTSENSE."  The

10   defendant is BLACK & DECKER (U.S.), Inc. also called, for short, "BLACK &

11   DECKER."  The parties entered into a written contract concerning a product called

12   "PLANTSMART."  The PlantSmart product is a gardening tool that takes soil, water and

13   light readings and provides users with information about their home plants and garden

14   plants through the Internet.  Pursuant to the parties' contract, the PlantSmart product was

15   sold by Black & Decker under the Black & Decker brand name.  In this lawsuit, PlantSense

16   claims that Black & Decker breached the parties' contract causing monetary damages to

17   PlantSense.  PlantSense has the burden of proving its breach of contract claim, and I will

18   instruct what that means.

19        Black & Decker denies that it breached the contract and denies that PlantSense

20   incurred any monetary loss.  In addition, Black & Decker asserts various affirmative

21   defenses.  Black & Decker has the burden of proof on these affirmative defenses.

22   PlantSense denies Black & Decker's affirmative defenses.

23   **III.   Burden of Proof**

24        1.    <u>Preponderance of the Evidence</u>

25        When a party has the burden of proof on any claim or affirmative defense by a

26   preponderance of the evidence, it means you must be persuaded by the evidence that the

27   claim or affirmative defense is more probably true than not true.

28        You should base your decision on all of the evidence, regardless of which party

1    presented it.

2          2.    Clear and Convincing Evidence

3          When a party has the burden of proving any claim or defense by clear and convincing

4    evidence, it means you must be persuaded by the evidence that the claim or defense is

5    highly probable.  This is a higher standard of proof than proof by a preponderance of the

6    evidence.

7          You should base your decision on all of the evidence, regardless of which party

8    presented it.

9    **IV.   Evidence**

10         1.    Evidence You May Consider

11         The evidence you are to consider in deciding what the facts are consists of: (1) the

12   sworn testimony of any witness; (2) the exhibits received into evidence; and (3) any facts to

13   which the lawyers have agreed.

14         a.    Evaluation of Witness Testimony

15         In deciding the facts in this case, you may have to decide which testimony to believe

16   and which testimony not to believe.  You may believe everything a witness says, or part of

17   it, or none of it.  Proof of a fact does not necessarily depend on the number of witnesses

18   who testify about it.  In considering the testimony of any witness, you may take into

19   account:

20         (1) the opportunity and ability of the witness to see or hear or know the things

21   testified to;

22         (2) the witness's memory;

23         (3) the witness's manner while testifying;

24         (4) the witness's interest in the outcome of the case and any bias or prejudice;

25         (5) whether other evidence contradicted the witness's testimony;

26         (6) the reasonableness of the witness's testimony in light of all the evidence; and

27         (7) any other factors that bear on believability.

28         The weight of the evidence as to a fact does not necessarily depend on the number of

Case No. 12-cv-03922 NC
PROPOSED FINAL                        3
INSTRUCTIONS

witnesses who testify about it.

b.    <u>Impeachment Evidence—Witness</u>

The evidence that a witness [e.g., has been convicted of a crime, lied under oath on a prior occasion, etc.] may be considered, along with all other evidence, in deciding whether or not to believe the witness and how much weight to give to the testimony of the witness and for no other purpose.

c.    <u>Expert Witnesses</u>

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.  The expert witnesses who testified in this case are [INSERT NAMES].

An expert witness may be asked to assume that certain facts are true and to give an opinion based upon that assumption.  This is a hypothetical question.  If you determine that any fact assumed in such a question has not been established by the evidence, you should determine the effect of the failure to establish that fact upon the value of an opinion based on that fact.

d.    <u>Stipulated Facts</u>

The parties have agreed to certain facts that have been provided to you.  You should therefore treat these facts as having been proved.

e.    <u>Stipulated Testimony</u>

The parties have agreed what [witness]'s testimony would be if called as a witness. You should consider that testimony in the same way as if it had been given here in court.

f.    <u>Judicial Notice</u>

The court has decided to accept as proved the fact that [state fact], even though no evidence has been introduced on the subject.  You must accept this fact as true.

//

g.      Deposition in Lieu of Live Testimony

A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath to tell the truth and lawyers for each party may ask questions.  The questions and answers are recorded.  When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

The deposition of [witness] was taken on [date].  You should consider deposition testimony, presented to you in court in lieu of live testimony, insofar as possible, in the same way as if the witness had been present to testify.

[Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.]

h.      Use of Interrogatories of a Party

Evidence [will now be] [was] presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side.  These answers [have been] [were] given in writing and under oath, before the actual trial, in response to questions that were submitted in writing under established court procedures.  You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

i.      Charts and Summaries

(1) Not Received in Evidence

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

(2) Received in Evidence

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

2.     Things You May Not Consider

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1) Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4) Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

3.     Types of Evidence

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night.  However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk.  Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience, and common

Case No. 12-cv-03922 NC
PROPOSED FINAL
INSTRUCTIONS

6

1    sense.

2         4.    <u>Evidence for a Limited Purpose</u>

3         Some evidence may be admitted for a limited purpose only.

4         When I instruct you that an item of evidence has been admitted for a limited purpose,

5    you must consider it only for that limited purpose and for no other.

6         5.    <u>Evidence in Electronic Format</u>

7         Those exhibits capable of being displayed electronically will be provided to you in

8    that form, and you will be able to view them in the jury room.  A computer, projector,

9    printer and accessory equipment will be available to you in the jury room.

10        A court technician will show you how to operate the computer and other equipment;

11   how to locate and view the exhibits on the computer; and how to print the exhibits.  You

12   will also be provided with a paper list of all exhibits received in evidence.  If you need

13   additional equipment or supplies, you may make a request by sending a note.

14        In the event of any technical problem, or if you have questions about how to operate

15   the computer or other equipment, you may send a note to the clerk, signed by your

16   foreperson or by one or more members of the jury.  Be as brief as possible in describing the

17   problem and do not refer to or discuss any exhibit you were attempting to view.

18        If a technical problem or question requires hands-on maintenance or instruction, a

19   court technician may enter the jury room with the clerk present for the sole purpose of

20   assuring that the only matter that is discussed is the technical problem.  When the court

21   technician or any non-juror is in the jury room, the jury shall not deliberate.  No juror may

22   say anything to the court technician or any non-juror other than to describe the technical

23   problem or to seek information about operation of equipment.  Do not discuss any exhibit or

24   any aspect of the case.

25        The sole purpose of providing the computer in the jury room is to enable jurors to

26   view the exhibits received in evidence in this case.  You may not use the computer for any

27   other purpose.  At my direction, technicians have taken steps to make sure that the computer

28   does not permit access to the Internet or to any "outside" website, database, directory,

game, or other material.  Do not attempt to alter the computer to obtain access to such

materials.  If you discover that the computer provides or allows access to such materials,

you must inform me immediately and refrain from viewing such materials.  Do not remove

the computer or any electronic data from the jury room, and do not copy any such data.

**V.    PlantSense's Breach of Contract Claim Against Black & Decker**

1.    Breach of Contract—Elements

To recover damages from Black & Decker for breach of contract, PlantSense must

prove all of the following by a preponderance of the evidence:

(1) that PlantSense and Black & Decker entered into a contract;

(2) that PlantSense did all, or substantially all, of the significant or material things

that the contract required it to do;

(3) that Black & Decker failed to do something that the contract required it to do; and

(4) that PlantSense was harmed by that failure.

I will now give you more details about the first three of these elements:

As to the first element of the breach of contract claim, the parties have stipulated that

they entered into a contract.

As to the second element of the breach of contract claim, the first party to a contract

who fails to do one of the significant or material things that the contract required it to do

may not later proceed against the other party for breach of contract.  However, a slight

breach by one party will not necessarily terminate the obligations of the other party to

perform under the contract.  The question whether the breach is of sufficient importance to

justify non-performance by the non-breaching party is one of degree and is determined by

weighing the consequences in the light of the actual custom of persons in the performance

of contracts similar to the one that is involved in this case.

In determining whether a failure to render or to offer performance is material, the

following circumstances are significant:

(a) the extent to which the injured party will be deprived of the benefit which it

reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which it will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure its failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

As to the third element of the breach of contract claim, PlantSense claims that Black & Decker failed to do the following in breach of the contract between PlantSense and Black & Decker:

(a) Provide PlantSense every month during the term of the agreement with an updated 12-month delivery and forecast schedule for the PlantSmart product;

(b) Make reasonable commercial efforts to sell the PlantSmart product with efforts normal for its business;

(c) Commit marketing funds that Black & Decker reasonably determined were necessary to support the launch and sale of the PlantSmart product;

(d) Meet the $350,000 minimum marketing placement spend by December 4, 2010; and

(e) Make reasonable efforts to support the PlantSmart product with marketing spends normal for their business.

2.    Performance Explained

Performance is the successful completion of a contractual duty.  Full performance consistent with the terms of the agreement discharges the contractual duty.  Full performance means not only performance of the character, quality and amount required, but also performance within the agreed time.

//

**VI.   Black & Decker's Affirmative Defenses**

      1.    <u>Performance Prevented by a Party to the Contract</u>

      A party to a contract may not prevent another party from performing its contractual duties and then claim that the other party has breached the contract or failed to complete its terms.  For example, a farmer who contracts with a builder to put up a barn on the farmer's land must make the land available to the builder so that the work may be done.  Likewise, the farmer must not interfere with the progress of the work.

      In this case, you must determine whether PlantSense prevented or otherwise interfered with Black & Decker's duty to perform [__describe terms of the contract__].

      2.    <u>Estoppel</u>

      When the conduct of a party to a contract intentionally or unintentionally leads another party to the contract, in reasonable reliance on that conduct, to change its position to its detriment, then the original party cannot enforce a contractual right contrary to the second party's changed position.  This is known in the law as estoppel.  Reasonable reliance means that the party that changed its position must have lacked the means of knowing the truth about the facts in question.

      In this case, Black & Decker must prove:

      (1) that there was a contractual relationship between Black & Decker and PlantSense;

      (2) that Black & Decker changed its position to its detriment because of PlantSense's conduct; and

      (3) that Black & Decker reasonably relied on the conduct of PlantSense.

      You must determine whether Black & Decker has proved all of the above elements by clear and convincing evidence.

**VII.   Damages**

      It is the duty of the Court to instruct you about the measure of damages.  The fact that I have instructed you about the proper measure of damages should not be considered as my suggesting which party is entitled to your verdict in this case.  Instructions about the measure of damages are given for your guidance only if you find that a damages award is in

Case No. 12-cv-03922 NC
PROPOSED FINAL
INSTRUCTIONS

order.  It is for you to determine what damages, if any, have been proved.

1.  <u>Damages—Breach of Contract—General</u>

If you find that Black & Decker committed a breach of contract, PlantSense is entitled to compensation in an amount that will place it in the same position it would have been in if the contract had been properly performed.  In assessing damages, you must consider how PlanSense's position would have been different "but-for" Black & Decker's breach of the contract.  The measure of damages is the loss actually sustained as a result of the breach of the contract.  PlantSense has the burden of proving damages by a preponderance of the evidence.

2.  <u>Damages—Breach of Contract—Burden of Proof</u>

PlantSense bears the burden of showing that its lost profit damages were the immediate, direct, and proximate result of the alleged breach of contract by Black & Decker.  PlantSense's lost profit damages would be considered the direct result of the breach if they are precisely what PlantSense bargained for, and only an award of damages equal to lost profits will put PlantSense in the same position it would have occupied had the contract been performed.

To recover the damages it seeks, PlantSense bears the burden of proving with reasonable certainty that a breach of the contract by Black & Decker caused PlantSense an injury.  Reasonable certainty is not the same as absolute certainty.  Rather, reasonable certainty merely means that the fact of damages must not be speculative.  Once the *fact* of damage is established, PlantSense does not need to prove the *amount* of damages with mathematical accuracy.  However, PlantSense must provide evidence offering some reasonable basis upon which you may estimate with a fair degree of certainty the probable loss which PlanSense will sustain in order to enable you to make an intelligent determination of the extent of the loss.  The fact that there might be some uncertainty as to PlantSense's damage or the fact that the damage might be very difficult to measure will not preclude you from determining its value.

If you find that Black & Decker's conduct created any of uncertainties that may make

estimating PlantSense's damages less than a mathematically precise exercise, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate.  However, the damages may not be determined by mere speculation or guess.  If you find that the fact of such lost profits is speculative or that the amount of any lost profits is unproven, then you may not award damages for lost profits.

Also, in calculating such damages, you must calculate net profit: the amount by which PlanSense's gross revenue would have exceeded all of the costs and expenses that would have been necessary to produce those revenues.

Lost profits on a new business may be too speculative to allow recovery if there is no evidence that the business would be profitable, but recovery for lost profits is not denied merely because a business is newly established.  A new business, like an existing business, must prove lost profits with reasonable certainty.

Recovery for lost profits is limited to those profits which might have been made pursuant to the performance of the particular contract sued on, during the period for which the contract was to run.  PlantSense may not recover future profits as damages for a period beyond the termination date of the contract sued upon since termination automatically extinguishes the relationship between the parties.

3.    Damages—Breach of Contract—General/Nominal

A party that is harmed by a breach of contract is entitled to damages in an amount calculated to compensate it for the harm caused by the breach.  The compensation should place the injured party in the same position it would have been in if the contract had been performed.

If you find that PlantSense is entitled to a verdict in accordance with these instructions, but do not find that PlantSense has sustained actual damages, then you may return a verdict for PlantSense in some nominal sum such as one dollar.  Nominal damages are not given as an equivalent for the wrong but rather merely in recognition of a technical injury and by way of declaring the rights of PlantSense.

1      4.      Duty to Mitigate Damages

2      Generally, the measure of damages for one who is harmed by a breach of contract is

3   tempered by a rule requiring that the injured party make a reasonable effort, whether

4   successful or not, to minimize the losses suffered.  To mitigate a loss means to take steps to

5   reduce the loss.  If an injured party fails to make a reasonable effort to mitigate its losses, its

6   damage award must be reduced by the amount a reasonable effort would have produced

7   under the same circumstances.  This reduction, however, must be measured with reasonable

8   probability.

9   **VIII. Conduct of the Jury**

10      Because you must base your verdict only on the evidence received in the case and on

11   these instructions, I remind you that you must not be exposed to any other information

12   about the case or to the issues it involves.  Except for discussing the case with your fellow

13   jurors during your deliberations:

14      Do not communicate with anyone in any way and do not let anyone else communicate

15      with you in any way about the merits of the case or anything to do with it.  This

16      includes discussing the case in person, in writing, by phone or electronic means, via

17      email, text messaging, or any Internet chat room, blog, website or other feature.  This

18      applies to communicating with your family members, your employer, the media or

19      press, and the people involved in the trial.  If you are asked or approached in any way

20      about your jury service or anything about this case, you must respond that you have

21      been ordered not to discuss the matter and to report the contact to the court.

22      Do not read, watch, or listen to any news or media accounts or commentary about the

23      case or anything to do with it; do not do any research, such as consulting dictionaries,

24      searching the Internet or using other reference materials; and do not make any

25      investigation or in any other way try to learn about the case on your own.

26      The law requires these restrictions to ensure the parties have a fair trial based on the

27   same evidence that each party has had an opportunity to address.  A juror who violates these

28   restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that

Case No. 12-cv-03922 NC
PROPOSED FINAL                    13
INSTRUCTIONS

would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

**IX.    The Jury's Duty to Deliberate**

When you begin your deliberations, you should elect one member of the jury as your presiding juror.  That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so.  Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should.  Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision.  Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the courtroom deputy, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you,

1   sign and date it, and will advise the Court that you are ready to return to the courtroom.

2       IT IS SO ORDERED.

3       Date: October 28, 2014

                         Nathanael M. Cousins
4                            United States Magistrate Judge