UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| GARDENSENSOR, INC., a Delaware Corporation, formerly known as PLANTSENSE, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>BLACK & DECKER (U.S.), INC., a Maryland Corporation,<br><br>Defendant. | Case No. 12-cv-03922 NC<br><br>**FINAL JURY INSTRUCTIONS** |

## I. Introduction

Members of the Jury: Now that you have heard all of the evidence, it is my duty to instruct you as to the law of the case.

Each of you has received a copy of these instructions that you may take with you to the jury room to consult during your deliberations.

You must not infer from these instructions or from anything I may say or do as indicating that I have an opinion regarding the evidence or what your verdict should be.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether

you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all important.

## II.    Summary of the Claims and Defenses in this Case

I will give you a brief review of the positions of the parties:

This case involves an alleged breach of contract.  The plaintiff in this case is a company called GARDENSENSOR, Inc. and is also known as "PLANTSENSE."  The defendant is BLACK & DECKER (U.S.), Inc. also called, for short, "BLACK & DECKER."  The parties entered into a written contract concerning a product called "PLANTSMART."  The PlantSmart product is a gardening tool that takes soil, water and light readings and provides users with information about their home plants and garden plants through the Internet.  Pursuant to the parties' contract, the PlantSmart product was sold by Black & Decker under the Black & Decker brand name.  In this lawsuit, PlantSense claims that Black & Decker breached the parties' contract causing monetary damages to PlantSense.  PlantSense has the burden of proving its breach of contract claim, and I will instruct you on what that means.

Black & Decker denies that it breached the contract and denies that PlantSense incurred any monetary loss.  In addition, Black & Decker asserts various affirmative defenses.  Black & Decker has the burden of proof on these affirmative defenses. PlantSense denies Black & Decker's affirmative defenses.

## III.    Burden of Proof

1.    <u>Preponderance of the Evidence</u>

Proof by a preponderance of the evidence means proof that something is more likely than not. It means that certain evidence, when compared to the evidence opposed to it, has the more convincing force and makes you believe that something is more likely true than not. Preponderance of the evidence does not depend on the number of witnesses.  If the

evidence on any particular point is evenly balanced, the party having the burden of proof has not proved that point by a preponderance of the evidence, and you must find against the party on that point.

In deciding whether any fact has been proved by a preponderance of the evidence, you may, unless I tell you otherwise, consider the stipulated facts and the testimony of all witnesses regardless of who called them, and all exhibits received into evidence regardless of who produced them.

2. <u>Clear and Convincing Evidence</u>

Clear and convincing evidence is a stricter standard of proof than proof by a preponderance of the evidence. To establish proof by clear and convincing evidence means to prove something that is highly probable, reasonably certain, and free from serious doubt.

**IV.  Evidence**

1. <u>Evidence You May Consider</u>

The evidence you are to consider in deciding what the facts are consists of: (1) the sworn testimony of any witness; (2) the exhibits received into evidence; and (3) any facts to which the lawyers have agreed.

a. <u>Evaluation of Witness Testimony</u>

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it. Proof of a fact does not necessarily depend on the number of witnesses who testify about it. In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case and any bias or prejudice;

(5) whether other evidence contradicted the witness's testimony;

(6) the reasonableness of the witness's testimony in light of all the evidence; and

(7) any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify about it.

    b.      Expert Witnesses

Some witnesses, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case. The expert witnesses who testified in this case are Glenn Sheets and Karl Ehlert.

An expert witness may be asked to assume that certain facts are true and to give an opinion based upon that assumption. This is a hypothetical question. If you determine that any fact assumed in such a question has not been established by the evidence, you should determine the effect of the failure to establish that fact upon the value of an opinion based on that fact.

    c.      Stipulated Facts

The parties have agreed to certain facts that have been provided to you. You should therefore treat these facts as having been proved.

    d.      Deposition in Lieu of Live Testimony

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded.

You should consider deposition testimony, presented to you in court in lieu of live testimony in the same way as if the witness had been present to testify. The following deposition testimony was presented to you in court in lieu of live testimony:

Deposition of DeAnn Romjue, taken September 18 and September 19, 2014;

Deposition of Cathy McHugh, taken September 18, 2014;

Case No. 12-cv-03922 NC
FINAL JURY INSTRUCTIONS    4

Deposition of John Weetenkamp, taken on September 17, 2014;

Deposition of Brent Pfister, taken on July 21 and July 22, 2014;

Deposition of Jeffrey Ansell, taken on September 25, 2014.

e.    Charts and Summaries Not Received in Evidence

Certain charts and summaries not received in evidence have been shown to you in order to help explain the contents of records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

2.    Things You May Not Consider

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

3.    Types of Evidence

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.

1  Circumstantial evidence is proof of one or more facts from which you could find another
2  fact. You should consider both kinds of evidence. The law makes no distinction between
3  the weight to be given to either direct or circumstantial evidence. It is for you to decide
4  how much weight to give to any evidence.

5  By way of example, if you wake up in the morning and see that the sidewalk is wet,
6  you may find from that fact that it rained during the night. However, other evidence, such
7  as a turned on garden hose, may provide a different explanation for the presence of water on
8  the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial
9  evidence, you must consider all the evidence in the light of reason, experience, and common
10 sense.

11      4.    <u>Evidence in Electronic Format</u>

12  Those exhibits capable of being displayed electronically will be provided to you in
13  that form, and you will be able to view them in the jury room. A computer will be available
14  to you in the jury room.

15  A court technician will show you how to operate the computer and how to locate and
16  view the exhibits on the computer. You will also be provided with a paper list of all
17  exhibits received in evidence. If you need additional equipment or supplies, you may make
18  a request by sending a note.

19  In the event of any technical problem, or if you have questions about how to operate
20  the computer, you may send a note to the courtroom deputy, signed by the presiding juror or
21  by one or more members of the jury. Be as brief as possible in describing the problem and
22  do not refer to or discuss any exhibit you were attempting to view.

23  If a technical problem or question requires hands-on maintenance or instruction, a
24  court technician may enter the jury room with the courtroom deputy present for the sole
25  purpose of assuring that the only matter that is discussed is the technical problem. When
26  the court technician or any non-juror is in the jury room, the jury shall not deliberate. No
27  juror may say anything to the court technician or any non-juror other than to describe the
28  technical problem or to seek information about operation of equipment. Do not discuss any

exhibit or any aspect of the case.

The sole purpose of providing the computer in the jury room is to enable jurors to view the exhibits received in evidence in this case. You may not use the computer for any other purpose. At my direction, technicians have taken steps to make sure that the computer does not permit access to the Internet or to any "outside" website, database, directory, game, or other material. Do not attempt to alter the computer to obtain access to such materials. If you discover that the computer provides or allows access to such materials, you must inform me immediately and refrain from viewing such materials. Do not remove the computer or any electronic data from the jury room, and do not copy any such data.

**V.     PlantSense's Breach of Contract Claim Against Black & Decker**

1.     <u>Meaning of Contract</u>

You are not asked to interpret the meaning of the contract. In deciding the facts of this case, you must not consider the testimony of witnesses about their understanding of what the contract means.

Despite the parties' disagreement about the meaning of the term "marketing placement spend" used in the contract, the term is clear and unambiguous and means marketing funds spent to support the launch and sale of the PlantSmart product.

2.     <u>Breach of Contract—Elements</u>

To recover damages from Black & Decker for breach of contract, PlantSense must prove all of the following by a preponderance of the evidence:

(1) that PlantSense and Black & Decker entered into a contract;

(2) that PlantSense substantially complied with the terms of the contract;

(3) that Black & Decker failed to perform one or more terms of the contract; and

(4) that PlantSense was harmed by that failure.

I will now give you more details about the first and third of these elements:

As to the first element of the breach of contract claim, the parties have stipulated that they entered into a contract.

As to the third element of the breach of contract claim, PlantSense claims that Black & Decker failed to do the following in breach of the contract between PlantSense and Black & Decker:

(a) Provide PlantSense every month during the term of the agreement with an updated 12-month delivery and forecast schedule for the PlantSmart product;

(b) Make reasonable commercial efforts to obtain orders for the PlantSmart product with sales efforts normal for Black & Decker's business;

(c) Commit marketing funds that Black & Decker reasonably determined were necessary to support the launch and sale of the PlantSmart product;

(d) Meet the $350,000 minimum marketing placement spend by December 4, 2010; and

(e) Make reasonable efforts to support the PlantSmart product with marketing spends normal for Black & Decker's business;

(f) Provide reasonable evidence to PlantSense that shows that the marketing activity described in subsections (c), (d), and (e) above has taken place.

### 3. Performance Explained

Performance is the successful completion of a contractual duty. Full performance consistent with the terms of the agreement discharges the contractual duty. Full performance means not only performance of the character, quality and amount required, but also performance within the agreed time.

## VI. Black & Decker's Affirmative Defenses

### 1. Performance Prevented by a Party to the Contract

In this case, Black & Decker contends that PlantSense prevented or otherwise interfered with Black & Decker's duty to perform its contractual duties to make reasonable commercial efforts to sell and support the product. Black & Decker claims that PlantSense prevented or otherwise interfered with Black & Decker's duty to perform under the contract by:

(a) Intentionally concealing known design defects of the PlantSmart product from

Black & Decker;

(b) Failing to fulfill its contractual responsibility to modify the tooling to meet Black & Decker's product requirements; and

(c) Failing to fulfill its contractual responsibility to modify the fertilizer sensor tooling to meet Black & Decker's high volume requirements.

In order for Black & Decker to prevail on this affirmative defense, it must prove the defense by a preponderance of the evidence.

2. <u>Material Breach by PlantSense</u>

The first party to a contract who fails to do one of the significant or material things that the contract required it to do may not later proceed against the other party for breach of contract. However, a slight breach by one party will not terminate the obligations of the other party to perform under the contract. The question whether the breach is of sufficient importance to justify non-performance by the non-breaching party is one of degree and is determined by weighing the consequences in the light of the actual custom of persons in the performance of contracts similar to the one that is involved in this case. For a breach of contract to be material, it must go to the root or essence of the agreement between the parties, or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract.

In determining whether a failure to render or to offer performance is material, the following circumstances are significant:

(a) the extent to which the injured party will be deprived of the benefit which it reasonably expected;

(b) the extent to which the injured party can be adequately compensated for the part of that benefit of which it will be deprived;

(c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

(d) the likelihood that the party failing to perform or to offer to perform will cure its failure, taking account of all the circumstances including any reasonable assurances;

(e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

One party's uncured, material failure of performance will not suspend or discharge the other party's duty to perform where the latter party, voluntarily, intentionally, and with knowledge of the facts, either performs or indicates a willingness to do so, despite the breach, or insists that the defaulting party continue to render future performance.

In order for Black & Decker to prevail on this affirmative defense, it must prove by a preponderance of the evidence that PlantSense was the first party who failed to do one of the significant or material things that the contract required it to do so that Black & Decker was discharged from its duty to perform under the contract.

3. <u>Estoppel</u>

When the conduct of a party to a contract intentionally or unintentionally leads another party to the contract, in reasonable reliance on that conduct, to change its position to its detriment, then the original party cannot enforce a contractual right contrary to the second party's changed position. This is known in the law as estoppel. Reasonable reliance means that the party that changed its position must have lacked the means of knowing the truth about the facts in question.

In order for Black & Decker to prevail on this affirmative defense, it must prove:

(1) that there was a contractual relationship between Black & Decker and PlantSense;

(2) that Black & Decker changed its position to its detriment because of PlantSense's conduct; and

(3) that Black & Decker reasonably relied on the conduct of PlantSense.

Black & Decker must prove all of the above elements of its estoppel defense by clear and convincing evidence.

As to the second element of Black & Decker's defense of estoppel, Black & Decker claims that it changed its position to its detriment because of the following conduct by PlantSense:

(a) PlantSense intentionally concealed known design defects of the PlantSmart

product from Black & Decker;

(b) PlantSense warranted that it had successfully modified the tooling to meet Black & Decker's product requirements when it had not; and

(c) PlantSense warranted that it had successfully modified the fertilizer sensor tooling to meet Black & Decker's high volume requirements when it had not.

### 4. Duty to Mitigate Damages

Generally, the measure of damages for one who is harmed by a breach of contract is tempered by a rule requiring that the injured party make a reasonable effort, whether successful or not, to minimize the losses suffered. To mitigate a loss means to take steps to reduce the loss. If an injured party fails to make a reasonable effort to mitigate its losses, its damage award must be reduced by the amount a reasonable effort would have produced under the same circumstances. This reduction, however, must be measured with reasonable probability. In order for Black & Decker to prevail on this affirmative defense, it must prove by a preponderance of the evidence that PlantSense failed to make reasonable efforts to minimize or reduce the losses it suffered.

## VII. Damages

It is the duty of the Court to instruct you about the measure of damages. The fact that I have instructed you about the proper measure of damages should not be considered as my suggesting which party is entitled to your verdict in this case. Instructions about the measure of damages are given for your guidance only if you find that a damages award is in order. It is for you to determine what damages, if any, have been proved.

### 1. Damages—Breach of Contract—General

If you find that Black & Decker committed a breach of contract, PlantSense is entitled to compensation in an amount that will place it in the same position it would have been in if the contract had been properly performed. In assessing damages, you must consider how PlantSense's position would have been different "but-for" Black & Decker's breach of the contract. The measure of damages is the loss actually sustained as a result of the breach of the contract. PlantSense has the burden of proving damages by a preponderance of the

evidence.

### 2. Damages—Breach of Contract—Burden of Proof

PlantSense bears the burden of showing that its lost profit damages were the immediate, direct, and proximate result of the alleged breach of contract by Black & Decker. PlantSense's lost profit damages would be considered the direct result of the breach if they are precisely what PlantSense bargained for, and only an award of damages equal to lost profits will put PlantSense in the same position it would have occupied had the contract been performed.

To recover the damages it seeks, PlantSense bears the burden of proving with reasonable certainty that a breach of the contract by Black & Decker caused PlantSense an injury. Reasonable certainty is not the same as absolute certainty. Rather, reasonable certainty merely means that the fact of damages must not be speculative. Once the *fact* of damage is established, PlantSense does not need to prove the *amount* of damages with mathematical accuracy. However, PlantSense must provide evidence offering some reasonable basis upon which you may estimate with a fair degree of certainty the probable loss which PlantSense will sustain in order to enable you to make an intelligent determination of the extent of the loss. The fact that there might be some uncertainty as to PlantSense's damage or the fact that the damage might be very difficult to measure will not preclude you from determining its value.

If you find that Black & Decker's conduct created any of the uncertainties that may make estimating PlantSense's damages less than a mathematically precise exercise, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. However, the damages may not be determined by mere speculation or guess. If you find that the fact of such lost profits is speculative or that the amount of any lost profits is unproven, then you may not award damages for lost profits.

Also, in calculating such damages, you must calculate net profit: the amount by which PlantSense's gross revenue would have exceeded all of the costs and expenses that would

have been necessary to produce those revenues.

Lost profits on a new business may be too speculative to allow recovery if there is no evidence that the business would be profitable, but recovery for lost profits is not denied merely because a business is newly established.  A new business, like an existing business, must prove lost profits with reasonable certainty.

**VIII. Conduct of the Jury**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it.  This includes discussing the case in person, in writing, by phone or electronic means, via email, text messaging, or any Internet chat room, blog, website or other feature.  This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial.  If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.
>
> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own.

The law requires these restrictions to ensure the parties have a fair trial based on the same evidence that each party has had an opportunity to address.  A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over.  If any juror is exposed to any outside information, please notify the court immediately.

//

## IX. The Jury's Duty to Deliberate

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not hesitate to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

If it becomes necessary during your deliberations to communicate with me, you may send a note through the courtroom deputy, signed by your presiding juror or by one or more members of the jury. No member of the jury should ever attempt to communicate with me except by a signed writing; I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court. If you send out a question, I will consult with the parties before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including me—how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged. Do not disclose any vote count in any note to the court.

//

A verdict form has been prepared for you. After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and will advise the Court that you are ready to return to the courtroom.

IT IS SO ORDERED.

Date: November 6, 2014

_____
Nathanael M. Cousins
United States Magistrate Judge